NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0365n.06

No. 14-1966

UNITED STATES COURT OF APPEAL
FOR THE SIXTH CIRCUIT

**FILED**
May 18, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| JULIAN ANTHONY WORTHEY, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

**OPINION**

BEFORE: BOGGS, SUHRHEINRICH, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** Defendant-Appellant Julian Anthony Worthey (Worthey) appeals the district court's denial of his 18 U.S.C. § 3582 motion for a sentence reduction based on the Fair Sentencing Act's (FSA) 2011 reductions to the mandatory minimum sentences and the United States Sentencing Commission Guidelines (USSG or Guidelines) sentencing ranges for crack-cocaine offenses. We **AFFIRM**.

## I. FACTS

Confidential informants purchased a combined total of 2.5 grams of crack cocaine from Worthey in two controlled transactions in October of 2008. Based on these purchases, law enforcement obtained a search warrant for Worthey's Jackson, Michigan, residence. On October

20, 2008, federal agents executed the warrant and recovered 51.99 grams of crack cocaine, a digital scale, and a semiautomatic pistol. The weapon had been reported to the Walker, Michigan, Police Department as stolen. Agents also found a Baker College identification card, a Michigan state identification card, a receipt, and a ticket, all bearing Worthey's name. In addition, agents interviewed Worthey's then-girlfriend, Melanie Schuler, who admitted that she knew Worthey sold crack cocaine.

On January 28, 2009, a federal grand jury returned an indictment charging Worthey with 1) possession with intent to distribute cocaine base (crack) in violation of 21 U.S.C. § 841 (Count One) and 2) felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count Two). Worthey pleaded guilty to Count One on May 12, 2009, and the parties agreed on a sentencing range of 108- to 135-months of imprisonment. Count Two was dismissed at Worthey's sentencing. The agreed-upon Guidelines range was based on a USSG § 2D1.1 total offense level of 29 and a criminal-history category of III, which the parties calculated by determining that Worthey had a § 2D1.1 base offense level of 30 (because he possessed more than 50 grams of crack cocaine); he was subject to a two-level enhancement for possession of a firearm; and he was entitled to a three-level reduction for acceptance of responsibility. However, because the statutory mandatory minimum sentence was 120-months of imprisonment, the parties acknowledged that the sentencing range was effectively 120- to 135-months of imprisonment.[1] Without the plea agreement, Worthey's actual Guidelines sentencing range would have been 262- to 327-months of imprisonment based on a total offense level of 34 and a

---

[1] Had the Government filed 21 U.S.C. § 851 sentencing enhancements based on Worthey's prior convictions, the statutory minimum sentence would have been 240 months' imprisonment. However, as part of the plea agreement, the Government did not seek such enhancements.

criminal-history category of VI, resulting from his status as a career offender under USSG § 4B1.1.[2]

Around the time the plea agreement was drafted, Congress was contemplating legislation that would lower the sentences for offenses involving crack cocaine, and the parties addressed the possibility of such legislation. As explained by the Government at the plea hearing,[3] "As part of our agreement . . . we would give Mr. Worthey the benefit of any law that is passed; for instance, if the mandatory minimums were to come down. If that happens prior to his sentence, we would give him that benefit." The district court then asked, "Even if it were not retroactive?" And the Government responded, "Yes, that would be part of our agreement. So that should be placed on the record in the event that it is deemed not to be retroactive, as a benefit of this agreement, we would recommend that it be applied retroactively in this case." Counsel for Worthey responded, "That is very generous. The Government is being more generous than Congress might be in this case." On October 15, 2009, the district court sentenced Worthey to the statutory minimum of 120 months in prison, followed by five years of supervised release, and required him to pay a $100 special assessment. During sentencing, the court stated that although it accepted the PSR's calculations of Worthey's criminal-history category and base offense level, it would accept the plea agreement.

> . . . I am going to accept the Presentence Report as written with the criminal history category of 6 and the total offense level of 34, and I'm going to note a couple of things. One is that you all determined that his criminal history would be a category 3 and total offense level 29 which would have made the guidelines 120 to 135 which was your Rule 11 Plea Agreement. And that even without the career offender, the probation department determined that he was a criminal history

---

[2] Worthey met the criteria for career-offender status because he had two prior convictions for controlled-substance offenses. The maximum penalty for his 841(a)(1) violation was life imprisonment. Therefore, pursuant to § 4B1.1(A), Worthey's total offense level was 34, taking into account the three-level reduction for his acceptance of responsibility.

[3] This understanding was not included in the written plea agreement.

> category 5, I believe, and also total offense level which would have made the guideline [without] the career offender 140 to 175 months. I have considered that so I think I should tell you that. But I accept the Rule 11 Plea Agreement and because you all have agreed that the court should depart very downward I'm going to do that.

After rejecting the application of the career-offender Guidelines as "too harsh," the district court stated that it was "going to go with the Rule 11 Plea Agreement as advisory guidelines."

The FSA became effective August 3, 2010, nine months after Worthey was sentenced. On November 30, 2011, the district court appointed the Federal Defender Office to determine whether Worthey was eligible for a sentence reduction pursuant to the FSA. Worthey, through counsel, filed a motion for a reduced sentence under 18 U.S.C. § 3582(c)(2), claiming that pursuant to the 2011 Guidelines revisions, his base offense level for 51.99 grams of crack cocaine would be 26, but taking into consideration the weapon found in his residence (+2 levels) and his acceptance of responsibility for the crime (-3 levels), his base offense level would be 25. Further, he argued that the FSA reduced the mandatory minimum sentence under 21 U.S.C. § 841 from ten to five years. The Government opposed this motion. The district court denied Worthey's request for a sentence reduction, finding that Worthey was not eligible for a retroactive application of the FSA's crack-cocaine provisions because his sentence was imposed before the FSA went into effect in 2010. Worthey timely appealed.

## II.    DISCUSSION

"We review the district court's determination of the defendant's eligibility for a sentence reduction *de novo.* We review the district court's decision whether a sentence reduction is warranted under the circumstances for an abuse of discretion." *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011) (internal citations omitted).

Worthey first argues that the district court erred in determining that he is not eligible for a sentence reduction pursuant to the FSA. Worthey maintains that his plea agreement with the Government gives him the benefit of any reductions in mandatory minimum sentences, regardless whether they apply retroactively. The Government argues that the modifications made to the written plea agreement during the hearing do not require retroactive application of the FSA reductions to Worthey's sentence because the prosecutor only agreed to retroactive application if the mandatory minimums were reduced prior to sentencing. "[W]e would give Mr. Worthey the benefit of any law that passes; for instance, if the mandatory minimums were to come down. If that happens prior to his sentencing, we would give him that benefit."

The FSA increased the quantity of crack cocaine necessary to trigger the 120-month mandatory minimum sentence under 21 U.S.C. § 841 from 50 to 280 grams. However, both this court and the Supreme Court have held that the FSA does not apply retroactively to defendants sentenced before its effective date. "The Act simply does not apply to individuals sentenced before its effective date . . . " *United States v. Blewett*, 746 F.3d 647, 651 (6th Cir. 2013).

It is undisputed that Worthey was sentenced nine months before the FSA's mandatory minimum sentence reductions went into effect. Thus, although the plea agreement was modified to preserve the benefit of the FSA's sentence reductions should they occur before sentencing, Worthey was sentenced after the effective date of the Act and is therefore ineligible for the reduction. Worthey has not claimed that the Government is not providing the benefits it promised in the plea agreement.

Worthey also argues that the 18 U.S.C. § 3582(c)(2) and USSG Amendment 782 provisions reducing the Guidelines sentencing ranges for offenses involving crack cocaine apply and support lowering his sentence to 70 to 87 months of imprisonment. However, we need not

determine the applicability of Amendment 782 because Worthey has already been sentenced to the minimum sentence permitted by statute—120-months of imprisonment—and his sentence cannot be reduced further, regardless of the applicability of Amendment 782.

## CONCLUSION

For these reasons, we **AFFIRM.**